# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SCOTT WEINER,                          )
                                       )
                    Plaintiff,         )
                                       )
          v.                           )          1:25CV636
                                       )
VAN ALLEN APARTMENTS, et al.,          )
                                       )
                    Defendants.        )

_____

SCOTT J. WEINER,                       )
                                       )
                    Plaintiff,         )
                                       )
          v.                           )          1:25CV733
                                       )
CITY OF DURHAM, et al.,                )
                                       )
                    Defendants.        )


## <u>MEMORANDUM OPINION, ORDER, AND</u>
## <u>RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE</u>

The two, related, above-captioned cases come before the Court
on Applications for Leave to Proceed in District Court without
Prepaying Fees or Costs filed by Plaintiff. (<u>See</u> 1:25CV636 (the
"First Case"), Docket Entry 1; 1:25CV733 (the "Second Case"),
Docket Entry 1.)[1]  The Court will grant the instant Applications,
for the limited purpose of recommending (A) dismissal of all
federal claims in the First Case and the Second Case under 28

---

[1] Parenthetical citations list the case number, docket entry
number, and (if applicable) the page number(s) for the cited
document from the footer appended to the cited document upon its
docketing in the CM/ECF system (not any original pagination).

U.S.C. § 1915(e)(2)(B), as frivolous, for failure to state a claim, and/or due to immunity doctrines, and (B) dismissal without prejudice of all state claims in the First Case and the Second Case under 28 U.S.C. § 1367(c)(3).

LEGAL BACKGROUND

By statute, "[t]he clerk of each district court shall require the parties instituting any civil action . . . to pay a filing fee of $350," 28 U.S.C. § 1914(a), and "shall collect from the parties such additional fees only as are prescribed by the Judicial Conference of the United States," 28 U.S.C. § 1914(b); see also 28 U.S.C. § 1914 addendum, Judicial Conference Schedule of Fees (Dec. 1, 2023) (imposing "[a]dministrative fee for filing a civil action [of] . . . $55"). "The federal *in forma pauperis* statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts solely because his poverty makes it impossible for him to pay or secure the costs." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (internal quotation marks omitted). However, that statute also provides, inter alia, that "the court shall dismiss the case at any time if the court determines that . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

2

"[A] complaint . . . is frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). To make that assessment, the Court "appl[ies] common sense." Nasim, 64 F.3d at 954. The second ground for dismissal under Section 1915(e)(2)(B) attaches if a complaint fails "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[2] The third ground for dismissal under Section 1915(e)(2)(B) generally applies when doctrines established by the United States Constitution or at common law immunize governments and/or government personnel from liability for damages. See, e.g., Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984) (discussing sovereign immunity of states and state

_____

[2] Although "[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted).

3

officials under Eleventh Amendment); cf. Allen v. Burke, 690 F.2d 376, 379 (4th Cir. 1982) (noting that, even where "damages are theoretically available under [certain] statutes . . ., in some cases, immunity doctrines . . . preclude or severely limit the damage remedy" (internal quotation marks omitted)).

## PLAINTIFF'S PLEADINGS

The First Case began with Plaintiff's filing of a Verified Complaint (1:25CV636, Docket Entry 2 (the "636-Complaint")) against "Van Allen Apartments; Northwood Ravin; Jennifer Hobgood; Brianna Cole; Ashley Martin; Sophia Bushcarrel; Officer Norris #25004, individually and in official capacity; and David Ravin" (id. at 1), for "retaliation, harassment, and constructive eviction" (id.). In particular, the 636-Complaint asserts claims for "Retaliation in Violation of the First Amendment (42 U.S.C. § 1983)" (id. at 3), "False Arrest and Malicious Prosecution (Fourth and Fourteenth Amendments)" (id.), "Constructive Eviction and Retaliatory Lockout (State Law and Due Process Clause)" (id. at 4), "Conspiracy to Interfere with Civil Rights (42 U.S.C. § 1985)" (id.), and "Intentional Infliction of Emotional Distress" (id.). As remedies, the 636-Complaint requests, inter alia, damages and unspecified "[i]njunctive [r]elief." (Id.)[3]

---

[3] According to the 636-Complaint, "[t]his Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) for federal claims brought under 42 U.S.C. § 1983" (1:25CV636, Docket Entry 2 at 2), as well as "supplemental jurisdiction over state law claims under 28 U.S.C. § 1367" (id.).

4

Shortly after filing the 636-Complaint, Plaintiff moved for leave to amend (see 1:25CV636, Docket Entry 5), and attached thereto a Verified Amended Complaint (1:25CV636, Docket Entry 5-1 (the "636-Amended Complaint")).[4] The 636-Amended Complaint adds (via the caption) eight defendants: "Heather McDonald; Ondia Taylor; . . . [and] Jane and John Does 1-6." (Id. at 1 (all-caps font omitted); see also id. at 1-2 (changing spelling of names of Van Allen Apartments to Van Alen Apartments and of Sophia Bushcarrel to Sophie Bouscarol).) It also reformulates Plaintiff's claims as "[Section] 1983 – First Amendment Retaliation" (id. at 2), "[Section] 1983 – Fourteenth Amendment Due Process Violations" (id. at 3), "Malicious Prosecution (Federal and State Law)" (id.), "False Arrest (Fourth Amendment)" (id.), "Conspiracy to Violate Civil Rights ([Section] 1985)" (id.), "Constructive Eviction" (id.), "Abuse of Process/Coercion" (id.), and "Trespass to Leasehold" (id.). The 636-Amended Complaint's relief request again demands damages, as well as "[i]njunctive relief restoring Plaintiff's access and enjoining future retaliation." (Id.)

Plaintiff subsequently instituted the Second Case by filing another Verified Complaint (1:25CV733, Docket Entry 2 (the "733-Complaint")), against the "City of Durham" (id. at 2), the "Durham

_____

[4] At that time (i.e., prior to service of process and receipt by the Court of any responsive pleading), Plaintiff could amend as of right. See Fed. R. Civ. P. 15(a)(1). Accordingly, this Memorandum Opinion treats the 636-Amended Complaint as Plaintiff's operative pleading in the First Case.

Police Department" (id.), "Officer Norris, Sergeant K. Smith, Officer Atkins, [] Officer Knight" (id.), "John Doe Officer" (id.), and the "Durham District Attorney's Office" (id.), for "conspir[ing] with private apartment management to silence, displace, and arrest Plaintiff without cause or legal process" (id.). The 733-Complaint asserts these "Claims for Relief" (id. at 5 (all-caps font omitted)):

> Count I – First Amendment Retaliation ([Section] 1983)
>
> Count II – Fourth Amendment Unlawful Seizure ([Section] 1983)
>
> Count III – Fourteenth Amendment Due Process Violation ([Section] 1983)
>
> Count IV – Monell Liability (City of Durham)
>
> Count V – Abuse of Process/Coercive Misuse of Criminal Process
>
> Count VI – Civil Conspiracy ([Section] 1985(3))

(Id.; see also id. (requesting various remedies, including damages and "[i]njunctive relief barring [Durham Police Department] from enforcing private evictions without court order").)

Before the Court ordered service of process or received a responsive pleading, Plaintiff filed (without needlessly moving for leave) a Verified Amended Complaint (1:25CV733, Docket Entry 5 (the "733-Amended Complaint")), adding the nine other named Defendants (besides Officer Norris) from the 636-Amended Complaint (see id. at 1-2 (listing Van Alen Apartments, Northwood Ravin, David Ravin, Hobgood, Cole, Martin, Bouscarol, McDonald, and Taylor in caption

and party section)) and restating Plaintiff's "Legal Claims" (<u>id.</u> at 4 (all-caps and bold font omitted)), as follows:

Count I: First Amendment Retaliation ([Section] 1983)

. . . .

Count II: Fourth Amendment Unlawful Seizure / False Arrest ([Section] 1983)

. . . .

Count III: Fourteenth Amendment Due Process / Constructive Eviction ([Section] 1983)

. . . .

Count IV: Monell Liability (City of Durham)

. . . .

Count V: Civil Conspiracy ([Section] 1985)

. . . .

Count VI: Malicious Prosecution / Abuse of Process

. . . .

Count VII: Self-Help Eviction Statutory Violation

. . . .

Count VIII: Unfair and Deceptive Practices (N.C. [Gen. Stat.] § 75-1.1)

. . . .

Count IX: Intentional Infliction of Emotional Distress

(<u>Id.</u> at 4-5; <u>see also</u> <u>id.</u> at 2 ("This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343."), 5 (demanding, inter alia, damages and "[i]njunctive relief restoring property access and stopping future private evictions").)

7

In conducting the review required by Section 1915(e)(2)(B), the Court should note first that Section 1983 "applies, by its terms, only to a 'person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory[,]' deprives a person of a constitutional or statutory right, privilege, or immunity." <u>White Coat Waste Project v. Greater Richmond Transit Co.</u>, 35 F.4th 179, 189-90 (4th Cir. 2022) (emphasis added) (quoting 42 U.S.C. § 1983). As documented in the last section, Plaintiff has sued Van Alen Apartments, which he has described as "a residential apartment complex located in Durham, NC, managed by Northwood Ravin." (1:25CV636, Docket Entry 2 at 2; <u>see also</u> <u>id.</u> ("Northwood Ravin is a property management and development firm . . . ."); 1:25CV733, Docket Entry 2 at 2 (identifying Plaintiff as "a tenant at Van Alen Apartments").) A search of the business name database of the North Carolina Secretary of State confirmed that no such legal entity exists; simply put, "[Van Alen] Apartments is a building, and perhaps a trade name too, but it is not a person or organization. It is no more possible to sue '[Van Alen] Apartments' than it would be to sue the Mississippi River." <u>Carter v. AMC, LLC</u>, 645 F.3d 840, 843 (7th Cir. 2011); <u>see also</u> <u>Jones v. Lexington Cnty. Det. Ctr.</u>, 586 F. Supp. 2d 444, 451 (D.S.C. 2008) ("Inanimate objects – such as buildings, facilities, and grounds – do not act under color of

8

state law."), <u>recommendation adopted</u>, <u>id.</u> at 450. The Section 1983 claims against Van Alen Apartments thus fail as a matter of law.

The Court likewise should dismiss Plaintiff's Section 1983 claims against Northwood Ravin (presumably Northwood Ravin LLC, a business entity registered with the North Carolina Secretary of State), the person in charge of that entity (<u>see</u> 1:25CV636, Docket Entry 2 at 2 (identifying "David Ravin [a]s the principal and CEO of Northwood Ravin")), and its employees allegedly involved in the operation of the Van Alen Apartments (<u>see</u> <u>id.</u> (identifying Hobgood as "regional property manager employed by Northwood Ravin," Cole as "on-site manager of Van Allen Apartments," Martin as "assistant manager of Van Allen," and Bouscarol as "leasing agent at Van Allen"); 1:25CV733, Docket Entry 5 at 2 (alleging that Hobgood, Cole, Martin, and Bouscarol "are property staff," that "McDonald is corporate counsel," and that "Taylor is concierge")).[5] "To state a claim for relief in an action brought under § 1983, [Plaintiff] must establish that [he was] deprived of a right secured by the Constitution or laws of the United States, <u>and that the alleged deprivation was committed under color of state law</u>." <u>American Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 49-50 (1999) (emphasis added). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter

---

[5] This Memorandum Opinion collectively refers to Northwood Ravin, David Ravin, Hobgood, Cole, Martin, Bouscarol, McDonald, and Taylor as the "Northwood Ravin Defendants."

9

how discriminatory or wrongful." Id. at 50 (internal citation and quotation marks omitted); see also id. (equating that element to "state-action requirement of the Fourteenth Amendment"). To satisfy this element, Plaintiff must show "that the party charged with the deprivation [of federal rights is] a person who may fairly be said to be a state actor." Id. (internal quotation marks omitted). "Careful adherence to the 'state action' requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power." Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 936 (1982); see also id. at 936-37 (emphasizing duty of "courts to respect the limits of their own power as directed against . . . private interests").

"Here, the [Northwood Ravin D]efendants are [a] private apartment complex[ management company and its employees]." Williams v. Candletree Apartments, 38 F. Supp. 3d 801, 804 (N.D. Tex. 2014). Moreover, "[n]o facts are alleged in [Plaintiff's pleadings] as that would cause the [C]ourt to consider that [any of the Northwood Ravin D]efendant[s] was a state actor or was engaged in conduct that could in any way be attributed to the state." Id. "For example, there is no allegation that any of the owners [of Northwood Ravin] or [any of these Northwood Ravin] employees are state officials, or that any state officials are involved in [Northwood Ravin's] daily operations," id. (See 1:25CV636, Docket Entry 2 at 2-3 (setting out "Factual Allegations" (all-caps font

10

omitted)); 1:25CV636, Docket Entry 5-1 at 2 (reciting "Factual Background" (all-caps and bold font omitted)); 1:25CV733, Docket Entry 2 at 2-5 (setting out "Factual Allegations" (all-caps font omitted)); 1:25CV733, Docket Entry 5 at 2-5 (same).)

Plaintiff's claims against the Northwood Ravin Defendants therefore are "not cognizable under § 1983 because [they] did not act under color of state law in managing [his] apartment." Allis v. Charisma Prop. Mgmt., No. CIV 05-4116, 2005 WL 2046017, at *1 (D.S.D. Aug. 23, 2005) (unpublished); see also Morris v. DeHaan, No. 90-2190, 944 F.2d 905 (table), 1991 WL 177995, at *4 (6th Cir. Sept. 12, 1991) (unpublished) ("[The defendant-housing complex] is privately owned, and [the] complaint is devoid of any hint that [] the State . . . was involved in [its] day-to-day operation. Because [the defendant-housing complex] is a private actor, the district court properly dismissed [the plaintiff's] § 1983 claims." (internal citation omitted)); Clarke v. City of Phila., No. 25CV2802, 2025 WL 2462753, at *5 (E.D. Pa. Aug. 25, 2025) (unpublished) ("[A]llegations that . . . the [defendant-]property manager[s] sought to evict [the plaintiff] from the [rental] property, or changed the locks there, do[] not make them state actors."); Traylor v. Kochav Yachid Windjammer LLC, No. 3:21CV1912, 2021 WL 5910711, at *1-2 (N.D. Tex. Nov. 9, 2021) (unpublished) ("[The plaintiff] does not allege that [the defendant-landlord] engaged in any conduct that could be fairly attributable to the

11

State. Therefore, [the defendant-landlord] is not a state actor, and [the plaintiff's federal constitutional] claims should be dismissed."), <u>recommendation adopted</u>, 2021 WL 5908992 (N.D. Tex. Dec. 14, 2021) (unpublished); <u>Jones v. Winterwood Prop. Mgmt.</u>, Civ. Action No. 5:15-51, 2015 WL 4394244, at *2 (E.D. Ky. July 14, 2015) (unpublished) ("[The plaintiff's federal] constitutional claims against [the defendant-p]roperty [m]anagement [company] . . . and property manager [] must be dismissed for failure to state a claim because their actions were not taken 'under color of state law.' . . . [W]hile the actions of [the plaintiff's a]partment[complex's] property manager and management company may (or may not) have been wrongful, they cannot be said to have violated [the plaintiff's federal] constitutional rights.").[6]

---

[6] Plaintiff has alleged that (A) he "was jailed based on false statements by [] Martin and [] Bouscarol" (1:25CV636, Docket Entry 5-1 at 2), (B) "McDonald offered to drop criminal charges if Plaintiff vacated" (<u>id.</u>), (C) "Plaintiff was arrested for allegedly violating a no-contact order via two legal emails to . . . Cole and [] Hobgood" (<u>id.</u>; <u>see also</u> 1:25CV636, Docket Entry 2 at 3 (alleging that "Cole contacted the Durham Police Department claiming that Plaintiff's statement about 'getting loud' was threatening" after which "Plaintiff was questioned by law enforcement for approximately 20 minutes"); 1:25CV733, Docket Entry 5 at 3 (alleging that "Cole reported alleged 'loud threats' to [Durham Police Department]")), and (D) "Taylor falsely stated Plaintiff had a warrant at McDonald's direction" (1:25CV733, Docket Entry 5 at 3; <u>see also</u> 1:25CV733, Docket Entry 2 at 4 (alleging that "Taylor[] told officers on the phone, in Plaintiff's presence, 'He may have a warrant, according to our attorney' (Heather McDonald)" when, in fact, "[n]o warrant existed")). "But merely filing a complaint with the police, reporting a crime, requesting criminal investigation of a person, or seeking a restraining order, even if the complaint or report is deliberately false, does not give rise (continued...)

12

Conversely, "[i]n *Griffin[ v. Breckenridge*, 403 U.S. 88 (1971), the Supreme] Court held . . . that § 1985(3) reaches not only conspiracies under color of state law, but also purely private conspiracies." <u>Bray v. Alexandria Women's Health Clinic</u>, 506 U.S. 263, 268 (1993); <u>see also</u> 42 U.S.C. § 1985(3) ("If two or more persons in any State or Territory conspire . . . for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . [and], if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a

---

[6](...continued)
to a claim against the complainant for a civil rights violation." <u>Vazquez v. Combs</u>, No. 04 Civ. 4189, 2004 WL 2404224, at *4 (S.D.N.Y. Oct. 22, 2004) (unpublished). Nor can Plaintiff convert any of the Northwood Ravin Defendants into state actors by alleging without factual support that McDonald "coordinat[ed] with the Durham District Attorney's Office" (1:25CV733, Docket Entry 2 at 4) and by making other conclusory allegations that "Defendants acted . . . in concert with public officials" (1:25CV636, Docket Entry 2 at 3). <u>See, e.g.</u>, <u>Polacek v. Kemper Cnty.</u>, 739 F. Supp. 2d 948, 952 (S.D. Miss. 2010) ("[The plaintiff] does allege that the private defendants are liable 'for acting in agreement or in concert with the Kemper County Sheriff's Department to cause [her] arrest and prosecution without probable cause in violation of the Fourth Amendment.' However, it is not enough merely to recite that there was an agreement or that defendants conspired or acted in concert, for these are *conclusions*, not *facts*." (emphasis in original)); <u>see also</u> <u>Lugar</u>, 457 U.S. at 939 n.21 (rejecting suggestion that "private party's mere invocation of state legal procedures constitutes joint participation or conspiracy with state officials satisfying the § 1983 requirement of action under color of law" (internal quotation marks omitted)).

13

citizen of the United States, the party so injured or deprived may have an action for the recovery of damages . . . against any one or more of the conspirators.")  The Supreme Court, however, limited the reach of Section 1985(3) "by requiring, as an element of the cause of action, [a particular] kind of invidiously discriminatory motivation . . . ."  Bray, 506 U.S. at 268 (internal quotation marks omitted).  Specifically, the Supreme Court "said that the language of § 1985(3) requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions."  Id. at 268-69 (internal brackets, emphasis, and quotation marks omitted).

In the First Case, Plaintiff initially asserted (in the 636-Complaint) a claim for "[c]onspiracy to [i]nterfere with [c]ivil [r]ights" (1:25CV636, Docket Entry 2 at 4), in violation of "[Section] 1985" (id.), i.e., that the Northwood Ravin Defendants "jointly conspired to retaliate against Plaintiff for his advocacy" (id.), via "coordinated actions to restrict access, call law enforcement, and suppress Plaintiff's rights [as] part of a common scheme" (id.), and then (in the 636-Amended Complaint) described the claim under Section 1985 as "[c]onspiracy to [v]iolate [c]ivil [r]ights" (1:25CV636, Docket Entry 5-1 at 3), arising from the Northwood Ravin Defendants "act[ing] in concert to deprive Plaintiff of constitutional rights" (id.).  Yet, the factual

14

allegations in those pleadings do <u>not</u> describe any "racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action," <u>Bray</u>, 506 U.S. at 268-69 (internal quotation marks omitted). (<u>See</u> 1:25CV636, Docket Entry 2 at 2-3; 1:25CV636, Docket Entry 5-1 at 2.) Similarly, in the Second Case, although the 733-Complaint asserts a claim for "[c]ivil [c]onspiracy" (1:25CV733, Docket Entry 2 at 5), in violation of "[Section] 1985(3)" (<u>id.</u>) and the 733-Amended Complaint repeats that claim, while referencing "[Section] 1985" (1:25CV733, Docket Entry 5 at 4) and alleging that "Plaintiff's exclusion and criminalization involved coordinated conduct by both public and private actors" (<u>id.</u>), Plaintiff did not plead any factual matter establishing any "racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action," <u>Bray</u>, 506 U.S. at 268-69 (internal quotation marks omitted). (<u>See</u> 1:25CV733, Docket Entry 2 at 2-5; 1:25CV733, Docket Entry 5 at 2-3.) "Based on the failure of [Plaintiff's pleadings] to plausibly allege any conspiratorial plan <u>of class-based discriminatory animus</u>, [the Court should] conclude that [his] § 1985(3) claim[s are] properly dismissed for failure to state a claim upon which relief could be granted." <u>Strickland v. United States</u>, 32 F.4th 311, 362 (4th Cir. 2022) (emphasis added).[7]

_____

[7] In addition to its prohibition of conspiracies to deny equal protection of the law and equal privileges and immunities,
(continued...)

Next, the Court should recognize that the Durham County District Attorney's Office constitutes an arm of the State of North Carolina. See, e.g., N.C. Const. art. IV, § 18 ("The General Assembly shall, from time to time, divide the State into a convenient number of prosecutorial districts, for each of which a District Attorney shall be chosen . . . . The District Attorney shall . . . be responsible for the prosecution on behalf of the State of all criminal actions in the Superior Courts of his district, perform such duties related to appeals therefrom as the Attorney General may require, and perform such other duties as the General Assembly may prescribe." (emphasis added)). Importantly, "Will [v. Michigan Dep't of State Police, 491 U.S. 58 (1989),] prohibits a § 1983 action against [such state entities]." Manning

<hr />

[7](...continued)
Subsection (3) of Section 1985 prohibits conspiracies aimed at suppressing federal election support/advocacy by "force, intimidation, or threat," 42 U.S.C. § 1985(3), or at "injur[ing] any citizen in person or property on account of such support or advocacy," id. Plaintiff has alleged no facts of that sort in the First or Second Cases. (See 1:25CV636, Docket Entry 2 at 2-3; 1:25CV636, Docket Entry 5-1 at 2; 1:25CV733, Docket Entry 2 at 2-5; 1:25CV733, Docket Entry 5 at 2-3.) Section 1985 also contains two other subsections, see 42 U.S.C. § 1985(1)-(2), but neither provides any cause of action for Plaintiff. "Section 1985(1) prohibits conspiracies to prevent individuals from holding office or discharging official duties." Stankowski v. Farley, 251 F. App'x 743, 747 n.1 (3d Cir. 2007). "Section 1985(2) prohibits conspiracies to prevent witnesses from testifying in court, injuring witnesses who have testified, or attempting to influence or injure grand or petit jurors." Id. Plaintiff's pleadings lack allegations to support any such claim(s). (See 1:25CV636, Docket Entry 2 at 2-3; 1:25CV636, Docket Entry 5-1 at 2; 1:25CV733, Docket Entry 2 at 2-5; 1:25CV733, Docket Entry 5 at 2-3.)

v. South Carolina Dep't of Highway & Pub. Transp., 914 F.2d 44, 48 (4th Cir. 1990); see also Will, 491 U.S. at 65 ("conclu[ding] that a State is not a 'person' within the meaning of § 1983"), 70 (extending that holding to "governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes"); Grady v. Vickory, Civ. No. 5:11-CT-3212, 2013 WL 12121997, at *1 (E.D.N.C. May 8, 2013) (unpublished) (citing Will and dismissing as frivolous Section 1983 claims against district attorney's office), appeal dismissed, 544 F. App'x 191 (4th Cir. 2013); Puckett v. Carter, 454 F. Supp. 2d 448, 452 (M.D.N.C. 2006) ("[T]he Fourth Circuit has specifically held that the Eleventh Amendment bars claims brought in federal court against [North Carolina's] state district attorneys in their 'official' capacity." (citing Nivens v. Gilchrist, 444 F.3d 237, 249 (4th Cir. 2006))); Coffin v. South Carolina Dep't of Soc. Servs., 562 F. Supp. 579, 585 (D.S.C. 1983) (observing that "definition of 'persons' has not been found to include states, or their alter egos" for purposes of "[S]ection 1983 claim" (italics omitted)).[8]

---

[8] "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." Will, 491 U.S. at 71 n.10 (internal quotation marks omitted). Plaintiff, however, could not maintain such a claim here, because he has not alleged facts showing that "execution of a [state] policy or custom . . . inflict[ed any alleged] injury," Collins v. City of Harker Heights, 503 U.S. 115, 121 (1992) (internal quotation marks omitted); "instead[, he has] recount[ed] only his own personal experiences," (continued...)

The foregoing analysis disposes of all of Plaintiff's federal claims in the First and Second Cases, other than his Section 1983 claims against (A) the City of Durham, which Plaintiff has described as "a municipal corporation organized under North Carolina law" (1:25CV733, Docket Entry 2 at 2; see also 1:25CV733, Docket Entry 5 at 2 (identifying "City of Durham" as "municipal entit[y]")), (B) the Durham Police Department, which Plaintiff has described as "a municipal agency of the City of Durham" (1:25CV733, Docket Entry 2 at 2; see also 1:25CV733, Docket Entry 5 at 2 (identifying "Durham Police Department" as "municipal entit[y]")), and (C) five City of Durham police officers (four named and one unnamed) (see 1:25CV636, Docket Entry 2 at 2 (identifying Officer Norris as a "Durham police officer"); 1:25CV733, Docket Entry 2 at 2 (alleging that "Officer Norris, Sergeant [] Smith, Officer Atkins, and Officer Knight are sworn [Durham Police Department]

---

[8](...continued)
Harris v. Guice, No. 1:13CV268, 2015 WL 1401549, at *4 (M.D.N.C. Mar. 26, 2015) (unpublished) (Peake, M.J.) (recommending, even as to "request [for] injunctive relief," that "official capacity claims against [d]efendant[-state employees] should be dismissed"), recommendation adopted, 2015 WL 2089691 (M.D.N.C. May 4, 2015) (unpublished) (Beaty, S.J.). (See 1:25CV733, Docket Entry 2 at 1-6; 1:25CV733, Docket Entry 5 at 1-6.) Hence, any claim against an official in the Durham County District Attorney's Office for injunctive relief would "clearly fail[] to state a federal claim upon which relief can be granted," Dawkins v. Staley, No. 1:22CV299, 2023 WL 1069745, at *6 (M.D.N.C. Jan. 27, 2023) (unpublished) (Schroeder, J.), for want "of any allegations of a [state] policy or custom that caused [Plaintiff's] injury," id.; see also id. (explaining that said defect requires dismissal of both claims against governmental entity and "same claims against [its employee] in her official capacity").

18

officers, sued in their individual and official capacities" and that "John Doe Officer is an unidentified sworn [Durham Police Department] officer"); 1:25CV733, Docket Entry 5 at 2 ("Officer Norris, Sergeant Smith, Officer Atkins, Officer Knight, and John Doe Officer are [Durham Police Department] actors sued individually and officially.")). Starting with the second of those two entity-defendants, "[i]n North Carolina, a municipal agency is not an entity that may be sued. Furthermore, under North Carolina law, a police department is not an independent legal entity with the capacity to sue and be sued." Baker v. Durham Cnty. S.W.A.T. Team, No. 1:14CV878, 2016 WL 2621972, at *4 (M.D.N.C. May 5, 2016) (unpublished) (Webster, M.J.) (internal brackets, citations, and quotation marks omitted), recommendation adopted sub nom., Baker v. Durham S.E.T., No. 1:14CV878, 2016 WL 3747615, at *1 (M.D.N.C. July 11, 2016) (unpublished) (Osteen, C.J.). In sum, the Court should dismiss the Section 1983 claims against "the Durham Police Department . . . because th[at] entit[y] . . . is simply a component of the municipality, and, therefore, lacks the capacity to be sued." Id. (internal quotation marks omitted); accord, e.g., Scott v. City of Durham, No. 1:20CV558, 2021 WL 3856168, at *1 (M.D.N.C. Aug. 27, 2021) (unpublished) (Eagles, J.); Cates v. Sandoval, No. 1:20CV200, 2020 WL 5665537, at *7 (M.D.N.C. Sept. 23, 2020) (unpublished) (Schroeder, C.J.).

19

On the other hand, Section 1983 claims "appropriately [may be] brought against the legal entity operating the [Durham P]olice [D]epartment, the City of Durham." Scott, 2021 WL 3856168, at *1; see also, e.g., Franklin v. City of Charlotte, 64 F.4th 519, 535 (4th Cir. 2023) ("Municipalities are 'persons' within the meaning of § 1983."). But – as Plaintiff recognized by denominating his claim(s) against the City of Durham as claims for "Monell Liability" (1:25CV733, Docket Entry 2 at 5; 1:25CV733; Docket Entry 5 at 4) – "[t]o hold a municipality liable for a constitutional violation under § 1983, a plaintiff must show that the execution of a policy or custom of the municipality caused the [constitutional] violation," Misjuns v. City of Lynchburg, 139 F.4th 378, 384 (4th Cir. 2025) (emphasis added); "[t]his is referred to as *Monell* liability," id. (citing Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 694 (1978)). Of critical import, under Monell, "a municipality cannot be held liable simply for employing a tortfeasor," Riddick v. School Bd. of City of Portsmouth, 238 F.3d 518, 522 (4th Cir. 2000) (citing Monell, 436 U.S. at 691), as "[S]ection 1983 was not designed to impose municipal liability under the doctrine of respondeat superior," id. at 523. Moreover, "not every decision by every municipal official will subject a municipality to [S]ection 1983 liability." Id. "Therefore, to impose municipal liability . . ., [Section 1983] plaintiffs must identify municipal officials with final policymaking authority to

20

implement the alleged policy [or custom that caused the constitutional violation]." Id. (internal quotation marks omitted); see also Semple v. City of Moundsville, 195 F.3d 708, 712 (4th Cir. 1999) (emphasizing that "official policy" does not arise from "episodic exercises of discretion in the operational details of government" (internal quotation marks omitted)).

Applying those legal principles, the Court should "find that [Plaintiff's] *Monell* claim [should] properly [be] dismissed." Blair v. Appomattox Cnty. Sch. Bd., 147 F.4th 484, 493 (4th Cir. 2025). The 733-Amended Complaint baldly declares that the "City [of Durham] maintained customs allowing police-assisted private evictions without process." (1:25CV733, Docket Entry 5 at 4.) However, neither that pleading nor its predecessor offers any factual matter on that front. (See 1:25CV733, Docket Entry 2 at 2-5; 1:25CV733, Docket Entry 5 at 2-4.) "[As] such[, Plaintiff's] allegations are conclusory and fail to establish *Monell* liability even at this stage." Blair, 147 F.4th at 493. Put another way:

> Critically lacking is any support for the proposition that [any o]fficer . . . implemented an official government policy or custom. As the Supreme Court has recently explained, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. And "[courts] are not bound to accept as true a legal conclusion couched as a factual allegation." [Plaintiff's] allegations "do not permit [this Court] to infer more than the mere possibility of misconduct [by the City of Durham]." This mere possibility is inadequate to subject the [City of Durham] to [Plaintiff's Section 1983] suit for monetary damages.

21

Walker v. Prince George's Cnty., 575 F.3d 426, 431 (4th Cir. 2009) (emphasis added) (internal brackets, citations, and some quotation marks omitted) (quoting Iqbal, 556 U.S. at 678-79); see also Cook v. Howard, 484 F. App'x 805, 808-11 (4th Cir. 2012) (affirming dismissal of Section 1983 claim against municipality, where district court "conclud[ed] that the amended complaint did not allege sufficient facts to establish liability under Monell, and that the conclusory allegations were clearly insufficient under the standards set by the Supreme Court in Twombly and Iqbal," as the plaintiff "set[] forth legal conclusions masquerading as factual allegations" and "tender[ed] naked assertions devoid of further factual enhancement," which amounted to insufficient, "threadbare recital of the elements of [the] cause of action, supported by mere conclusory statements" (internal brackets, citations, ellipsis, full case names, and quotation marks omitted)).[9]

---

[9] That conclusion also necessitates dismissal of Plaintiff's official-capacity claims against any City of Durham police officers under Section 1983. See Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("[I]n an official-capacity suit the [employing] entity's 'policy or custom' must have played a part in the violation of federal law." (citing, inter alia, Monell)); see also id. at 167 n.14 ("There is no longer a need to bring official-capacity actions against local government officials, for under Monell, local government units can be sued directly for damages and injunctive or declaratory relief." (internal citation omitted)); Hughes v. Blankenship, 672 F.2d 403, 406 (4th Cir. 1982) ("Official capacity suits generally represent but another way of pleading an action against the entity of which the officer is an agent, and damages may be awarded against a defendant in his official capacity only if they would be recoverable against the governmental entity itself." (internal citation omitted) (citing, inter alia, Monell)).

Turning to Plaintiff's Section 1983 claims against City of Durham police officers, the 636-Complaint names Officer Norris as a defendant and identifies him as "both a Durham police officer and Van Allen's on-site courtesy officer." (1:25CV636, Docket Entry 2 at 2.) The 636-Complaint's section labeled "Factual Allegations" (id. (all-caps font omitted)) contains only one conclusory reference to Officer Norris: "On June 19, [2025,] Plaintiff was arrested based on false allegations made by Defendants Martin, Bushcarrel, and Norris, claiming he made criminal threats." (Id.; see also id. at 2-3 (making no other mention of Officer Norris in that section).) The section of the 636-Complaint setting out "Claims for Relief" (id. at 3 (all-caps font omitted)) then rephrases that lone, bald assertion (see id. ("Plaintiff was arrested on June 19, 2025, based on fabricated or grossly exaggerated statements by Van Allen employees and Officer Norris.")) and supplements it with equally conclusory statements that "[t]here was no probable cause for the arrest" (id.) and "Defendants intended to chill Plaintiff's advocacy by criminalizing his conduct without justification" (id.), for the apparent purpose of asserting a claim against Officer Norris for "False Arrest and Malicious Prosecution (Fourth and Fourteenth Amendments)" (id.).

The 636-Amended Complaint, in turn, deletes the affirmative allegation that Officer Norris made false statements in connection with (or, indeed, played any part in) Plaintiff's arrest on June

23

19, 2025 (see 1:25CV636, Docket Entry 5-1 at 2 ("June 19, [2025,] 8:45 p.m. – Plaintiff allegedly made comments to Sophie Bouscarol. By 10:15 p.m. – Plaintiff was jailed based on false statements by Ashley Martin and Sophie Bouscarol." (bullet-point omitted)); instead, it presents only this allegation about him: "Officer Norris, Badge #25004, resides at Van Alen and receives housing benefits. His role as both resident and arresting officer is a gross conflict of interest." (Id.; see also id. at 1-4 (containing no other reference to Officer Norris (outside of caption) and vaguely stating (in support of "Claims for Relief" for "Malicious Prosecution" and "False Arrest") that "Defendants secured criminal process through falsehoods and omissions, lacking probable cause" and that "[a]rrests were unlawful and based on fabricated allegations" (all-caps and bold font omitted)).)

With the 733-Complaint, as concerns Officer Norris, Plaintiff made these "Factual Allegations" (1:25CV733, Docket Entry 2 at 2 (all-caps font omitted)):

June 19 – Retaliatory Arrest by Courtesy Officer

On June 19, 2025, Plaintiff was arrested by Officer Norris, a [Durham Police Department] officer serving as Van Alen's on-site "courtesy officer."

The charge of "communicating threats" was based solely on management complaints, without probable cause, investigation, or allegation of violence.

(Id. at 3 (internal paragraph numbers omitted); see also id. at 2-5 (offering no other allegations about Officer Norris in that section

24

or "Claims for Relief" section, the latter of which includes claim

for "Fourth Amendment Unlawful Seizure" (all-caps font omitted)).)

The 733-Amended Complaint's "Factual Allegations" (1:25CV733,

Docket Entry 5 at 2 (all-caps and bold font omitted)) similarly

state that, "[on] June 19[, 2025,] Plaintiff was arrested by

[Durham Police Department] Officer Norris (Van Alen's courtesy

officer) on a false 'threat' claim" (id. at 3) and that

"Plaintiff's arrest lacked investigation, intent, or probable

cause" (id.; see also id. at 2-3 (tendering no other allegations

about Officer Norris)), presumably to validate claims of "Fourth

Amendment Unlawful Seizure / False Arrest" (id. at 4; see also id.

("Arrest and detentions lacked probable cause, rendering them

unlawful seizures intended to intimidate.")) and "Malicious

Prosecution" (id.; see also id. ("Criminal process used to 'evict'

Plaintiff – absent credible claims or probable cause.")).

The Fourth Circuit has held that, when (as here) a plaintiff

has "alleged that he had been arrested and prosecuted on state

criminal charges in violation of the [United States Constitution],

because his arrest was not supported by probable cause," Lambert v.

Williams, 223 F.3d 257, 261 (4th Cir. 2000), whether called "false

arrest [or] malicious prosecution," id. (internal quotation marks

omitted), "the foundation for [the] claim [i]s a seizure that was

violative of the Fourth Amendment," id. at 262 (internal quotation

marks omitted); see also id. ("[T]here is no such thing as a

25

'§ 1983 malicious prosecution' claim.  What we termed a 'malicious prosecution' claim in [prior decisions] is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution – specifically, the requirement that the prior proceeding terminate favorably to the plaintiff.  It is not an independent cause of action." (internal citation and footnote omitted)).  In that regard, "[t]he Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable."  Brooks v. City of Winston-Salem, 85 F.3d 178, 183 (4th Cir. 1996).

"[P]robable cause to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979) (internal quotation marks omitted).  "Probable cause requires more than bare suspicion but requires less than evidence necessary to convict.  It is an objective standard of probability that reasonable and prudent persons apply in everyday life."  Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir. 1998) (internal citations and quotation marks omitted).  In this case, the Court should conclude that Plaintiff's pleadings "contain[] only conclusory and vague allegations

regarding the existence of probable cause. . . . There are no facts in [these pleadings] . . . which would allow the [C]ourt to draw the reasonable inference that [Officer Norris] lacked probable cause." Hines v. Johnson, No. 1:19CV515, 2020 WL 1516397, at *11 (M.D.N.C. Mar. 30, 2020) (unpublished) (Osteen, J.). Plainly stated, "Plaintiff[ has] fail[ed] to include any nonclusory fact that there was no probable cause for [his] arrest. Because these allegations do not allow the [C]ourt to infer more than the mere possibility of misconduct, Plaintiff['s] claim[s for false arrest and/or] malicious prosecution under § 1983 [against Officer Norris should] be dismissed." Id. (internal quotation marks omitted).[10]

As to the remaining City of Durham police officers, Plaintiff first alleged (in the 733-Complaint) the following:

1) "[o]n June 28, 2025, around 3:00 a.m., Plaintiff contacted [the Durham Police Department] regarding ongoing exclusion from common areas and amenities" (1:25CV733, Docket Entry 2 at 3), after which "Officers Atkins, Knight, and a John Doe officer arrived and told Plaintiff management was 'allowed to lock you out' due to

_____

[10] To the extent any of Plaintiff's pleadings purport to assert a claim that Officer Norris arrested Plaintiff in retaliation for Plaintiff's expressive activity in violation of the First Amendment, that claim likewise fails as a matter of law, as Plaintiff's pleadings lack any factual matter that would support a reasonable inference that Officer Norris knew about any such expressive activity (much less that any such activity led Officer Norris to arrest Plaintiff). (See 1:25CV636, Docket Entry 2 at 2-3; 1:25CV636, Docket Entry 5-1 at 2-3; 1:25CV733, Docket Entry 2 at 2-5; 1:25CV733, Docket Entry 5 at 2-4.)

unpaid rent, despite no writ of possession" (<u>id.</u>; <u>see also</u> <u>id.</u> ("They enforced the exclusion on the spot."));

2) "[o]n July 16, 2025, Plaintiff spoke with Sergeant [] Smith by phone, reiterating the lockout and citing N.C. Gen. Stat. § 42-25.6" (<u>id.</u> at 4), but "Sgt. Smith again refused to take action, reaffirming it was a 'civil matter' and declining to review the law" (<u>id.</u>); and

3) "[o]n July 25, 2025, Officers Knight and Atkins trespassed Plaintiff from all common areas and a community fireworks event without court order" (<u>id.</u>).[11]

With less detail, the 733-Amended Complaint repeats the first and the third of those allegations (<u>see</u> 1:25CV733, Docket Entry 5 at 3 ("June 28[, 2025]: Officers Atkins, Knight, and Doe enforced lockout, stating management could 'lock you out' despite no writ of possession. . . . July 25[, 2025]: Officers Knight and Atkins trespassed Plaintiff from amenities – again without legal order.")), but not the second (<u>see</u> <u>id.</u> (omitting any mention of call from Plaintiff to Sergeant Smith on July 16, 2025)). The 733-Amended Complaint's section titled "Legal Claims" (<u>id.</u> at 4 (all-caps and bold font omitted)) then appears to link those allegations to the claim for "Fourteenth Amendment Due Process / Constructive

_____

[11] The 733-Complaint does not make clear what, if any, claims asserted therein apply to Sergeant Smith, Officer Atkins, Officer Knight, and/or John Doe Officer. (<u>See</u> 1:25CV733, Docket Entry 2 at 5 (listing "Claims for Relief" without any further specifications (all-caps font omitted)).)

28

Eviction" (<u>id.</u>; <u>see also</u> <u>id.</u> ("Lockout and deprivation of amenities constitute confiscation of property without due process.")).

"The Due Process Clause of the Fourteenth Amendment provides, 'No State shall deprive any person of life, liberty, or property, without due process of law.'" <u>Sansotta v. Town of Nags Head</u>, 724 F.3d 533, 540 (4th Cir. 2013) (internal ellipsis omitted) (quoting U.S. Const. amend. XIV, § 1). As set out above, "[i]t appears that Plaintiff may be alleging a violation of his procedural due process rights. However, the nature of this claim is unclear." <u>Banuelos v. Reyes</u>, No. 1:19CV1328, 2020 WL 4340535, at *4 (E.D. Cal. July 28, 2020) (unpublished). As the Fourth Circuit has explained:

> To succeed on a procedural due process claim, [ P]laintiff must satisfy three elements. First, he must demonstrate that he had a constitutionally cognizable life, liberty, or property interest. Second, he must show that the deprivation of that interest was caused by some form of state action. . . . Third, he must prove that the procedures employed were constitutionally inadequate.

<u>Sansotta</u>, 724 F.3d at 540 (internal citation and quotation marks omitted); <u>see also</u> <u>id.</u> ("Procedural due process simply ensures a fair process before the government may deprive a person of life, liberty, or property, but does not require certain results." (internal citation and quotation marks omitted)).

"Here, Plaintiff's due process[-related] allegations are conclusory and do not clearly identify any protected property or liberty interest that he has been deprived of based on his interactions with [Sergeant Smith and Officers Atkins, Knight, and

29

Doe]." <u>Jefferson v. Sam's E., Inc.</u>, No. 6:24CV324, 2025 WL 1692883, at *7 (E.D. Tex. May 9, 2025) (unpublished), <u>recommendation adopted</u>, 2025 WL 1672901 (E.D. Tex. June 13, 2025) (unpublished). "Moreover, Plaintiff['s pleadings] do[] not allege the independent source of law from which his due process rights originate." <u>Id.</u> Plaintiff's allegations concerning the incident on June 28, 2025, as well as the telephone call on July 16, 2025, suggest that Plaintiff may believe that, as a resident of a unit in Van Alen Apartments, he holds some sort of entitlement to use Van Alen Apartment's "common areas and amenities" (1:25CV733, Docket Entry 2 at 3), without the restrictions one or more of the Northwood Ravin Defendants imposed; however, Plaintiff's pleadings do not establish any such entitlement. (<u>See</u> 1:25CV733, Docket Entry 2 at 2-5; 1:25CV733, Docket Entry 5 at 2-5.)[12]

---

[12] Plaintiff's cryptic reference to having "cit[ed to Sergeant Smith] N.C. Gen. Stat. § 42-25.6" (1:25CV733, Docket Entry 2 at 4) does not suffice to establish any protected interest within the meaning of the Due Process Clause. That statute states:

> It is the public policy of the State of North Carolina, in order to maintain the public peace, that a residential tenant shall be evicted, dispossessed or otherwise constructively or actually removed from <u>his dwelling unit</u> only in accordance with the procedure prescribed in Article 3 or Article 7 of this Chapter.

N.C. Gen. Stat. § 42-25.6 (emphasis added). That provision, on its face, does <u>not</u> grant Plaintiff a right to have limits on his access to property at the Van Alen Apartments other than "his dwelling unit," <u>id.</u>, imposed only via "the [specified] procedure," <u>id.</u>

"As such, Plaintiff's allegations fail to allege a due process interest sufficient to maintain a claim." Jefferson, 2025 WL 1692883, at *7. Furthermore, as to the incident on June 28, 2025, and the telephone call on July 16, 2025, Plaintiff has alleged not that Sergeant Smith or Officers Atkins, Knight, and Doe took any affirmative actions to deprive Plaintiff of anything; rather, he evidently would have the Court impose liability on them under the Due Process Clause because they would not intervene on his behalf to undo actions taken by one or more of the Northwood Ravin Defendants to restrict Plaintiff's access to property at Van Alen Apartments (other than his apartment unit). (See 1:25CV733, Docket Entry 2 at 3-4; 1:25CV733, Docket Entry 5 at 3-4.) Even if the Court treated those restrictions as some form of eviction, "[c]ourts have held that an eviction by a private actor may become state action only where police are involved every step of the way." Banuelos, 2020 WL 4340535, at *3 (emphasis added) (internal quotation marks omitted). "Plaintiff['s pleadings] allege[] that . . . Officers [Atkins, Knight, and Doe] did not arrive to the scene until after he called for them – some [time] after [Northwood Ravin limited his access] . . . ." Wexler v. City of S.D., No. 24CV137, 2024 WL 4668152, at *8 (S.D. Cal. Nov. 4, 2024) (unpublished), appeal dismissed, No. 24-7466, 2024 WL 5457974 (9th Cir. Dec. 23, 2024) (unpublished). "Merely alleging that [those] Officers arrived at the rental unit and told [] Plaintiff to

31

[accept those access limits] after [they] already had been [imposed] . . . is insufficient to claim that th[ose ] Officers actually participated in the eviction." Id.  In like fashion, by rebuffing Plaintiff's demand (made over the telephone) for police action to counter the restrictions imposed by the Northwood Ravin Defendants, Sergeant Smith "w[as] not sufficiently involved in [any supposedly unlawful] eviction process to warrant liability, let alone convert the private eviction into state action." Anderson v. Lomas, No. C 11-1414, 2011 WL 5190044, at *4 (N.D. Cal. Oct. 31, 2011) (unpublished).  "Thus, Plaintiff [has] fail[ed] to plausibly allege that . . . Officers [Atkins, Knight, and Doe or Sergeant Smith] were part of [any] alleged unlawful eviction that deprived him of his property." Wexler, 2024 WL 4668152, at *8.

Lastly (as to any federal claims), the allegation that, "[o]n July 25, 2025, Officers Knight and Atkins trespassed Plaintiff from all common areas and a community fireworks event without court order" (1:25CV733, Docket Entry 2 at 4; accord 1:25CV733, Docket Entry 5 at 3) "states no facts about what procedural protections [they] denied him," Ralston v. Smith, No. 7:23CV348, 2025 WL 1869596, at *8 (W.D. Va. July 1, 2025) (unpublished).  "The fundamental requirements of due process are notice and an opportunity to be heard.  But [the] inquiry about the process due is flexible and depends on context." Doe v. Virginia Polytechnic Inst. & State Univ., 77 F.4th 231, 236 (4th Cir. 2023) (internal

citation and quotation marks omitted).  Plaintiff has not alleged

any facts regarding the relevant context and has not denied receipt

of notice of the trespass warning or an opportunity to be heard

about it.  (See 1:25CV733, Docket Entry 2 at 4; 1:25CV733, Docket

Entry 5 at 3.)  Accordingly, as concerns that incident, the Court

should reject any "procedural due process claim[ as] built of

conclusory assertions." Ralston, 2025 WL 1869596, at *8.  "Neither

the [C]ourt nor the defendants are obligated to create claims for

[Plaintiff] from general phrases alleging due process denials

. . . ." Id.; see also Doe v. The Citadel, No. 22-1843, 2023 WL

3944370, at *3 (4th Cir. June 12, 2023) (unpublished) (recognizing

that "bare and conclusory allegations do not support [a] claim that

[the plaintiff] was denied due process").[13]

Ultimately, "[t]his is simply not a federal civil rights

action.  What is left, instead, is a landlord and tenant dispute

falling squarely within the jurisdiction of the [state] courts."

Amiri v. Gelman Mgmt. Co., 734 F. Supp. 2d 1, 4 (D.D.C. 2010).  For

---

[13] As a final matter, the caption of the 636-Amended Complaint
includes as defendants "Jane and John Does 1-6" (1:25CV636, Docket
Entry 5-1 at 1 (all-caps font omitted), but the body of that
pleading makes no mention of any such defendants (see id. at 1-4).
Plaintiff thus has failed to state any claim against any such
defendants.  See, e.g., Huffman v. Ruley, No. 7:24CV612, 2025 WL
289671, at *1 (W.D. Va. Jan. 24, 2025) (unpublished) ("[The
c]omplaint mentions [two] defendants . . . only in the caption.
[The plaintiff] does not state any facts concerning what either of
these individuals did or failed to do so as to violate his
constitutional rights.  Therefore, [the court] will summarily
dismiss all claims against [these two defendants].").

33

that reason and with all of Plaintiff's federal claims subject to dismissal, the Court should decline to exercise supplemental jurisdiction over any state claims in the First and Second Cases.[14]

Federal courts possess supplemental jurisdiction over certain state claims - even after federal question jurisdiction ceases to exist; however, federal courts need not maintain supplemental jurisdiction under such circumstances. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); see also Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995) ("[T]rial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished."). "Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." Shanaghan, 58 F.3d at 110. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). Because the First and Second

_____

[14] The record does not establish diversity-of-citizenship jurisdiction over any state claims. (See, e.g., 1:25CV636, Docket Entry 2 at 2; 1:25CV733, Docket Entry 2 at 2.)

34

Cases have not moved beyond the pleading phase, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state claims. See, e.g., Nance v. City of Albemarle, 520 F. Supp. 3d 758, 802 (M.D.N.C. 2021) (Osteen, J.) ("Since this matter has not progressed past the motion to dismiss stage and only state law claims remain, this [C]ourt declines to exercise its supplemental jurisdiction over [those state law claims].").

<u>CONCLUSION</u>

The federal claims in the First and Second Cases all suffer from fatal legal deficiencies.

**IT IS THEREFORE ORDERED** that the Applications (1:25CV636, Docket Entry 1; 1:25CV733, Docket Entry 1) are **GRANTED FOR THE LIMITED PURPOSE OF ALLOWING THE COURT TO CONSIDER A RECOMMENDATION OF DISMISSAL.**

**IT IS RECOMMENDED** that (A) all federal claims in the First and Second Cases be dismissed under Section 1915(e)(2)(B), and (B) all state claims in the First and Second Cases be dismissed without prejudice under Section 1367(c)(3).

                                    /s/ L. Patrick Auld
                                **L. Patrick Auld**
                        **United States Magistrate Judge**
September 12, 2025

35